UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:25-CV-503-FL

| | |
|---|---|
| VICMARIE LOPEZ,<br><br>      Plaintiff,<br><br>v.<br><br>JC PENNEY,<br><br>      Defendant. | ORDER AND<br>MEMORANDUM AND<br>RECOMMENDATION |

This matter is before the court on Plaintiff Vicmarie Lopez's ("Lopez") application to proceed *in forma pauperis*, [DE-2], and for frivolity review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), [DE-1]. Lopez has demonstrated sufficient evidence of inability to pay the required court costs and the application to proceed *in forma pauperis* is allowed. However, it is recommended that the Title VII discrimination claim be dismissed for failure to state a claim, and that the retaliation and hostile work environment claims be allowed to proceed at this time.

## I.   STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the court shall dismiss the complaint if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from a defendant immune from such recovery. 28 U.S.C. § 1915(e)(2)(B)(i–iii); *see Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994) (explaining Congress enacted predecessor statute 28 U.S.C. § 1915(d) "to prevent abuse of the judicial system by parties who bear none of the ordinary financial disincentives to filing meritless claims"). A case is frivolous if it lacks an arguable basis in either law or fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *McLean v. United States*, 566 F.3d 391, 399 (4th Cir. 2009). A claim lacks an arguable basis in law when it is "based on an

indisputably meritless legal theory." *Neitzke*, 490 U.S. at 327. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." *Id.* at 327–28.

In order to state a claim on which relief may be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level . . . .'" *Twombly*, 550 U.S. at 555. While a complaint need not contain detailed factual allegations, the plaintiff must allege more than labels and conclusions. *Id.*

In the present case, Lopez is proceeding *pro se*, and pleadings drafted by a *pro se* litigant are held to a less stringent standard than those drafted by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). The court is charged with liberally construing a pleading filed by a *pro se* litigant to allow for the development of a potentially meritorious claim. *See id.*; *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Noble v. Barnett*, 24 F.3d 582, 587 n.6 (4th Cir. 1994). However, the principles requiring generous construction of *pro se* complaints are not without limits; the district courts are not required "to conjure up questions never squarely presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. FACTUAL BACKGROUND

Lopez filed a form complaint against Defendant JC Penney, her former employer, that contains very few allegations of employment discrimination in a fill-in-the-blank format. [DE-1]. Lopez also attached several exhibits to her complaint, including the Charge of Discrimination and Amended Charge of Discrimination she filed with the Equal Employment Opportunity Commission ("EEOC"); text messages sent between an unidentified individual, presumably Lopez or Lillian Ortiz Montanez ("Ortiz Montanez"), her partner, and a mobile phone contact identified

2

as "Rosa" who has the initials "RG"; an EEOC Determination letter dated May 21, 2025; an EEOC Affidavit completed by Ortiz Montanez; and an EEOC Conciliation Failure of Charge and Notice of Right to Sue letter dated June 18, 2025. [DE-1-1 to 1-6].

Through her complaint and the attached exhibits,[1] Lopez alleges, *inter alia*, that she was hired by JC Penney on January 9, 2024, and "[f]rom day one [she] was bullied by a black female, Darlene LNUNK, and a floor supervisor named Shie LNUNK." [DE-1-2] at 1. Lopez is Hispanic and asserts that Darlene "would make fun of how [she] spoke and would yell she could not understand [her] and would leave [her] talking to [herself] in front of customers." *Id.* According to Lopez, Darlene's actions left her "embarrassed and humiliated," but when she reported the incidents to her supervisor, Rosa Barrow ("Barrow"), a white female, on two occasions, "Ms. Barrow would not allow [her] to file a formal complaint against Darlene. She told [her] that if [she] filed a formal complaint they would fire her."[2] *Id.* Lopez was ultimately fired on March 3, 2024, shortly after she reported Darlene the second time, on February 19, 2024. *Id.* However, Darlene faced no consequences for her actions. *Id.*

### III. DISCUSSION

In her form complaint, Lopez checked a box reflecting that JC Penney discriminated against her based on her race, and in the comment section beside the checked box, wrote in

---

[1] Most of Lopez's factual allegations are contained in the exhibits (specifically her first EEOC charge and the amended charge), and given her *pro se* status, the court may consider them when determining whether the complaint states a plausible claim for relief. *See Holley v. Combs*, No. 22-6177, 2025 WL 1035288, at *2 (4th Cir. Apr. 8, 2025) (citing *Garrett v. Elko*, 120 F.3d 261, 1997 WL 457667, at *1 (4th Cir. 1997) ("[I]n order to determine whether the claim of a *pro se* plaintiff can withstand a motion to dismiss, it is appropriate to look beyond the face of the complaint to allegations made in any additional materials filed by the plaintiff.")).

[2] The EEOC Affidavit completed by Ortiz Montanez also contains allegations that, liberally construed, appear to suggest that Barrow knew from a private conversation with Ortiz Montanez that Lopez and Ortiz Montanez were in a financially vulnerable situation and used this information to "safe herself." [DE-1-5] at 2. However, these allegations are not related to Lopez's race, color, religion, sex, or national origin, 42 U.S.C.A § 2000e-2(a), and as such, are not discussed herein.

3

"hispanic/latina." [DE-1] at 4. By contrast, in her amended EEOC charge, Lopez indicated that she has been "discriminated and retaliated against because [she is] Hispanic," and in the section marked "Discrimination Based On," wrote in national origin and retaliation. [DE-1-2].

In a lawsuit asserting Title VII violations, a court "may only consider those allegations included in the EEOC charge" to determine whether a plaintiff has exhausted her remedies. *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013). If the claims alleged in the complaint "exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, [the claims in the civil action] are procedurally barred." *Id.* at 407–08 (quoting *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005)). However, an EEOC charge "does not strictly limit a . . . suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Chisholm v. United States Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981); *see also Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995) (finding claims which "exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof" are barred). In other words, "if the factual allegations in the administrative charge are reasonably related to the factual allegations in the formal litigation, the connection between the charge and the claim is sufficient." *Chacko*, 429 F.3d at 509. And just as the court must construe claims made by *pro se* litigants liberally, *see Haines*, 404 U.S. at 520, "EEOC charges must be construed with utmost liberality since they are made by those unschooled in the technicalities of formal pleading," *Alvarado v. Bd. of Trs. of Montgomery Cnty. Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988).

Here, while the exact terminology Lopez used in her EEOC charge and form complaint differs slightly, and she does not specifically reference a hostile work environment in either one,

4

viewing the facts alleged charitably, it appears that she has attempted to state claims for discrimination based on race and national origin, retaliation, and hostile work environment, all in violation of Title VII, against JC Penney, and that these claims have been administratively exhausted. *See* [DE-1-2] at 1; *Oswaldo Argueta v. Fred Smith Co.*, No. 5:19-CV-84-FL, 2019 WL 6337426, at *3 (E.D.N.C. Nov. 26, 2019) (finding administrative exhaustion where plaintiff checked sex and national origin boxes on EEOC charge but alleged race discrimination in his complaint, and the factual allegations in both were reasonably related); *McKernan v. Hayes*, No. 4:18-CV-27-FL, 2019 WL 1767563, at *5 (E.D.N.C. Apr. 22, 2019) (finding "plaintiff alleged sufficient facts in his charge to support his hostile work environment claims [in his complaint], notwithstanding not stating the specific words 'hostile work environment' [in his EEOC charge]"). Title VII, broadly speaking, prohibits an employer from "discharg[ing] any individual, or otherwise . . . discimin[ating] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C.A § 2000e-2(a).

### 1. Discrimination

In the Fourth Circuit, "if a plaintiff is able to produce direct evidence of discrimination, [s]he may prevail without proving all the elements of a prima facie case." *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 584–85 (4th Cir. 2015) (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002)). "Direct evidence must be 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006) (quoting *Taylor v. Va. Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999) (en banc) (citation and internal quotation marks omitted)). In other words, "[e]ven if there is a statement that

5

reflects a discriminatory attitude, it must have a nexus with the adverse employment action." *Id.* (citing *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 608 (4th Cir. 1999)); *see Lettieri v. Equant Inc.*, 478 F.3d 640, 649 (4th Cir. 2007). While typically most applicable at summary judgment, the court has previously applied this general rule at the pleadings stage where a plaintiff's allegations have included conduct or statements that they contend are outwardly discriminatory. *See Clements v. Town of Sharpsburg*, No. 5:18-CV-573-FL, 2019 WL 5079758, at *2–4 (E.D.N.C. Oct. 10, 2019); *Gethers v. Harrison*, No. 5:12–CV–430–F, 2014 WL 28814, at *3 (E.D.N.C. Jan. 2, 2014).

"Absent direct evidence, the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004)), *aff'd*, 566 U.S. 30 (2012). "Although an employee need not prove a prima facie case of discrimination to survive a motion to dismiss, he must state a plausible right to relief." *Ofoche v. Apogee Med. Grp., Va., P.C.*, 815 F. App'x 690, 692 (4th Cir. 2020) (citing *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017)). In the Title VII context, an adverse action is one that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). To state a plausible claim for relief, the complaint must contain allegations from which the court could find that the defendant took adverse employment action against the plaintiff because of her protected characteristic. *See McCleary-Evans*, 780 F.3d at 585. It is not enough to

6

simply state that one was treated differently and is a member of a protected class. *See Nadendla v. WakeMed*, 24 F.4th 299, 306 (4th Cir. 2022) (concluding plaintiff's allegations—that but for her race defendant's wrongful conduct would not have occurred and plaintiff suffered harm due to defendant's racial discrimination—were insufficient to state a claim because there were no facts alleged to support a plausible inference that defendant's actions were because of plaintiff's race).

Lopez's complaint and the attached exhibits are not the model of clarity or breadth, but even construing them liberally, she has not alleged facts sufficient to plausibly plead a claim for national origin and race discrimination on frivolity review. First, Lopez has alleged that at least one fellow employee engaged in conduct that was discriminatory, but she has failed to plausibly plead that this conduct came to bear directly on the adverse action at issue, i.e., Lopez's termination. *See Warch*, 435 F.3d at 520. Discrimination based on a foreign accent may be considered national origin discrimination, which often overlaps with race discrimination. *Rageh v. Univ. of N.C.*, No. 1:24-CV-336, 2024 WL 5056448, at *4 (M.D.N.C. Dec. 10, 2024) (citing *Bell v. Home Life Ins. Co.*, 596 F. Supp. 1549, 1555 (M.D.N.C. 1984); *Shulman v. Blue Cross & Blue Shield of S.C.*, No. 07-CV-2967, 2009 WL 2929534, at *2 (D.S.C. Sept. 2, 2009); 29 C.F.R. § 1606.1 (defining national origin discrimination broadly to include denial of equal employment opportunity based on "linguistic characteristics of a national origin group.")). However, here Lopez asserts that, while a fellow employee made fun of how she spoke and would "yell she could not understand me and would leave me talking to myself in front of customers," she was ultimately discharged after filing a second complaint against that employee—not because of her accent, national origin, or race. *See* [DE-1-2] at 1. As will be discussed in the subsequent sections, these allegations are sufficient to state claims for retaliation and hostile work environment in violation of Title VII. Yet they are insufficient to assert a claim for national origin or race discrimination

7

where Lopez has not alleged that the employee who mocked her accent played any role in terminating her position or clearly attributed any conduct or statements reflecting a discriminatory attitude to the person or persons who made that decision. *See Warch*, 435 F.3d at 520.

In the absence of allegations that would, if proven, constitute direct evidence of discrimination, Lopez has also failed to plausibly plead the elements of a prima facie case of discrimination based on national origin or race. Lopez, who is Hispanic, has alleged that she is a member of a protected class. [DE-1-2] at 1; *see Coleman*, 626 F.3d at 190. However, Lopez has not alleged that she exhibited satisfactory job performance; has stated that she suffered adverse employment action, i.e., was terminated, but has not connected her termination to her coworker's derogatory comments regarding her accent; and has not alleged that she was treated differently than coworkers of a different national origin or race, much less that she was treated differently because of either of these factors. [DE-1-2] at 1; *see Coleman*, 626 F.3d at 190. Thus, Lopez has not adequately alleged facts from which the court could find that JC Penney took adverse employment action against her because of her national origin or race. *See McCleary-Evans*, 780 F.3d at 585. Accordingly, Lopez has failed to state a claim for discrimination under Title VII, though it is possible that additional information would cure this deficiency.

### 2. Retaliation

"A Title VII retaliation claim requires that a plaintiff allege that she '[1] engaged in protected activity, [2] that [her] employer took an adverse employment action against [her], and that [3] there was a causal link between those events.'" *Neil v. Warren Cnty. Sch.*, No. 5:20-CV-595-FL, 2022 WL 4467671, at *4 (E.D.N.C. Sept. 26, 2022) (quoting *Savage v. Maryland*, 896 F.3d 260, 276 (4th Cir. 2018)). "Title VII protects not only complaints about 'employment actions actually unlawful under Title VII but also employment actions [the plaintiff] reasonably believes

to be unlawful.'" *Id.* (quoting *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 282 (4th Cir. 2015)). Thus, a plaintiff's filing of an EEOC charge can constitute protected activity under 42 U.S.C. § 2000e-3(a). *Gray v. Walmart Stores, Inc.*, No. 7:10-CV-171-BR, 2011 WL 1831780, at *7 (E.D.N.C. May 12, 2011) (citing *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 656 (4th Cir. 1998)).

Here, Lopez has stated a Title VII retaliation claim that is sufficient to survive frivolity review. As explained *supra*, in the instant case, Lopez asserts that she is Hispanic and that at least one fellow JC Penney employee "would make fun of how [she] spoke and would yell she could not understand [her] and would leave [her] talking to [herself] in front of customers." [DE-1-2] at 1. This caused Lopez to feel "embarrassed and humiliated," but when she reported the incidents to her supervisor, she "would not allow [her] to file a formal complaint against Darlene. She told [Lopez] that if [she] filed a formal complaint they would fire her." *Id.* Lopez reported her coworker's allegedly discriminatory behavior to her supervisor a second time, on February 19, 2024. *Id.* Then, just two weeks later, on March 3, she was fired, while the coworker she reported faced no consequences. *Id.*

Lopez has plausibly pleaded a Title VII retaliation claim because courts have "taken an expansive view of protected oppositional activity, including 'voicing one's opinions in order to bring attention to an employer's discriminatory activities' and 'complaining to one's supervisors about suspected violations.'" *Gates v. Waffle House Corp.*, No. 4:18-CV-00140-BO, 2019 WL 613555, at *6 (E.D.N.C. Jan. 9, 2019) (quoting *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998); *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 543–44 (4th Cir. 2003)) (cleaned up), *adopted by* 2019 WL 615364 (E.D.N.C. Feb. 13, 2019). Lopez has described that her supervisor warned her not to report employment practices she believed were unlawful, and

9

when she continued to complain about the alleged harassment, she was terminated. *See* [DE-1-2] at 1. This court has found similar allegations sufficient to state a Title VII retaliation claim in the past. *See Gates*, 2019 WL 613555, at *6 ("Gates alleges she was repeatedly and consistently threatened with termination whenever she complained to management about what she perceived as unlawful employment practices . . . . Such facts, if proven, are enough to state a claim for retaliation against Defendants.") (internal quotation marks and citation omitted). Additionally, Lopez alleges that she was terminated shortly after making her second complaint. *See* [DE-1-2] at 1. "Although not conclusive, temporal proximity between the protected activity and the adverse action often is sufficient for a 'prima facie case of causality.'" *Diede v. UNC Healthcare*, No. 5:16-CV-00788-BR, 2017 WL 745731, at *3 (E.D.N.C. Jan. 20, 2017) (citing *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006) (quoting *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989))), *adopted by* 2017 WL 744559 (E.D.N.C. Feb. 24, 2017). Accordingly, Lopez's Title VII retaliation claim against JC Penney should be allowed to proceed.

### 3. Hostile Work Environment

A hostile work environment is characterized as a workplace "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Boyer-Liberto*, 786 F.3d at 277 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). To bring a hostile work environment claim under Title VII, a plaintiff must allege harassment that was (1) unwelcome; (2) based on race; (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) imputable to the defendant as the plaintiff's employer. *Whitfield v. DLP Wilson Med. Ctr., LLC*, 482 F. Supp. 3d 485, 490 (E.D.N.C. 2020) (citing *E.E.O.C. v. Xerxes Corp.*, 639 F.3d 658, 668 (4th Cir. 2011)). The highest hurdle for

10

plaintiffs to overcome is typically the third element, because "[t]o determine whether conduct is severe or pervasive, the court considers a variety of factors, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Berry v. S. States Coop., Inc.*, No. 5:17-CV-635-FL, 2018 WL 4365499, at *2 (E.D.N.C. Sept. 13, 2018) (quoting *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011)). The number of occurrences is not dispositive, for "[s]ufficiently severe conduct can constitute harassment, even if the conduct occurs in only one instance." *Id.* (citing *Boyer-Liberto*, 786 F.3d at 280–81). "However, '[a]ctivities like simple teasing, offhand comments, and off-color jokes, while often regrettable, do not cross the line into actionable misconduct.'" *Id.* (quoting *E.E.O.C. v. Fairbrook Med. Clinic, P.A.*, 609 F.3d 320, 328 (4th Cir. 2010)).

In considering severity and pervasiveness, "the court examines the allegations both subjectively and objectively." *Coleman v. Altec, Inc.*, No. 5:16-CV-954-D, 2018 WL 4289610, at *3 (E.D.N.C. Sept. 7, 2018) (citing *Harris*, 510 U.S. at 21–22). "First, the employee must subjectively consider the conduct to be sufficiently severe or pervasive as to alter his conditions of employment." *Id.* (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270–71 (2001)). "Second, a court views the conduct from the perspective of a reasonable person in the employee's position to determine whether it is objectively severe or pervasive." *Id.* (citing *Breeden*, 532 U.S. at 271). To be actionable, "discriminatory intimidation, ridicule, and insult" based on the protected characteristic must permeate the work environment in a manner "sufficiently severe or pervasive to alter the conditions" of the plaintiff's employment and to "create an abusive working environment." *Harris*, 510 U.S. at 21 (quotations omitted).

In the instant case, Lopez alleges that at least one fellow employee, and possibly a floor

11

supervisor, continuously made insensitive comments pertaining to her race and national origin to her during her employment at JC Penney, to the point that she was "embarrassed and humiliated in front of customers"; she complained about this conduct to her supervisor on multiple occasions; and her supervisor not only failed to address the complaint or otherwise rectify the situation, but informed her that "if [she] filed a formal complaint they would fire her." [DE-1-2] at 1. While bare bones, these allegations are sufficient to survive frivolity review, and any defenses are more properly explored on a fully briefed motion to dismiss. This is predominately because in measuring the severity of harassing conduct and imputing said conduct to the employer, the status of the harasser can be a significant factor, as well as the supervisor's reaction to the harassment. *See Boyer-Liberto*, 786 F.3d at 278 ("[A] supervisor's use of [a racial epithet] impacts the work environment far more severely than use by co-equals.") (quoting *Rodgers v. W.–S Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993)); *id.* (explaining that where the harasser is a supervisor, the employer is strictly liable if the behavior "culminates in a tangible employment action," but otherwise "may escape liability by establishing . . . that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided") (quoting *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013)). Accordingly, Lopez's hostile work environment claim against JC Penney should be allowed to proceed.

## IV. CONCLUSION

For the reasons stated above, the application to proceed *in forma pauperis* is allowed, and it is recommended that the discrimination claim be dismissed and that the retaliation and hostile work environment claims be allowed to proceed.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on

12

Plaintiff. You shall have until **September 18, 2025**, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If you do not file written objections to the Memorandum and Recommendation by the foregoing deadline, you will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, your failure to file written objections by the foregoing deadline will bar you from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

So ordered, this the 4th day of September 2025.

Robert B. Jones, Jr.
United States Magistrate Judge

13